UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
THOMAS COLLIER,

                            Plaintiff,              07 Civ. 532 (PKC)

       -against-                          MEMORANDUM
                                                       AND ORDER

THE CITY OF NEW YORK, KAREN
MELENDEZ-HUTT, Principal, and THE
DEPARTMENT OF EDUCATION,

                            Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

            The defendants have filed an unopposed motion for summary judgment in this employment discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., New York State and City human rights laws, and 42 U.S.C. § 1983. For the reasons explained below, the defendants' motion is granted and the plaintiff's claims are dismissed.

BACKGROUND

            Plaintiff Thomas Collier is an African-American male who commenced employment with the New York City Department of Education ("DOE") on September 27, 1999. (56.1 ¶¶ 2, 4.) His first DOE job was as a school aide in P.S. 30. (56.1 ¶ 4.) While at P.S. 30, he also worked as a YMCA site coordinator for an after-school program unaffiliated with the DOE. (56.1 ¶ 5.) Plaintiff worked at P.S. 30 from September 27, 1999 until May 17, 2005, when he was informed that due to budgetary constraints, he

would be "excessed" from his position as a school aide. (56.1 ¶¶ 4, 6.) As an excessed employee, the plaintiff continued to receive his full salary, and he was instructed to continue reporting to P.S. 30 until another position became available. (56.1 ¶¶ 7-8.) Being excessed was not equivalent to termination, and instead required plaintiff to be reassigned to a different school. (56.1 ¶ 7; Melendez-Hutt Dec. ¶ 4.)

At a P.S. 30 staff meeting of September 9, 2005, plaintiff was told that he would be reassigned to the hours of 3:30 p.m. to 5:30 p.m., a schedule that conflicted with his YMCA employment. (56.1 ¶ 9.) Plaintiff left the staff meeting, clocked out of work, and traveled to the DOE's Regional Operations Center to request employment at a school where his hours would not conflict with his YMCA work. (56.1 ¶¶ 10-11.) He did not report to work at P.S. 30 from September 12-15, 2005. (56.1 ¶ 12.) Plaintiff did not announce or explain his absence to P.S. 30 principal, defendant Karen Melendez-Hutt, who concluded that he had abandoned his job and terminated his employment. (56.1 ¶¶ 13-14.) She informed plaintiff of his termination in a letter dated September 15, 2005. (Chiu Dec. Ex. E.)

By October 20, 2005, Melendez-Hutt had agreed to compensate the plaintiff with back pay, which was to be transmitted through an emergency paycheck. (56.1 ¶¶ 16, 25; Chiu Dec. Ex. M.) She also agreed to reinstate the plaintiff. (56.1 ¶ 16.) On October 26, 2005, plaintiff grieved his termination and sought immediate reinstatement with back pay for September 9, 2005 through September 19, 2005, at which point, the grievance was determined to be moot. (56.1 ¶ 15; Chiu Dec. Ex. G.)[1] Plaintiff

---

[1] I note that the plaintiff's submissions to various entities have referred to a termination period running from September 9, 2005 through September 19, 2006. This includes a record of a grievance hearing dated January 17, 2006, which took place more than nine months before September 19, 2006. (Chiu Dec. Ex. G.) The 2006 date also is cited in the Complaint. (Complaint at 3.) The grievance hearing record

subsequently transferred to P.S. 172 and was given a schedule that did not conflict with his YMCA employment. (56.1 ¶ 17.) While at P.S. 30, Collier's overall performance had been evaluated as "outstanding" by Melendez-Hutt. (56.1 ¶ 25; Collier Dep. at 91; Chiu Dec. Ex. L.)

On January 24, 2007, plaintiff commenced this action by filing a complaint and jury demand. The Complaint alleges that he was terminated for discriminatory reasons and that he was subjected to retaliation, thereby violating Title VII. (Complaint at 3.) It also asserts violations of 42 U.S.C. § 1983, New York Executive Law section 296, and New York City Administrative Code 8-107. (Complaint at 5.) According to the Complaint, Collier was improperly terminated, and his work records improperly state that he was terminated rather than excessed. (Complaint at 4.) Plaintiff testified at deposition that Melendez-Hutt never made any derogatory comments about his race. (56.1 ¶ 19; Collier Dep. at 92.) However, he asserted that Melendez-Hutt discriminated against him when she terminated his employment and investigated a student's claim that he engaged in corporal punishment. (56.1 ¶¶ 18, 20; Collier Dep. at 72-75.) As of the date that this motion was filed, Collier remains employed by the DOE as a school aide. (56.1 ¶ 3.)

Defendants filed their summary judgment motion on May 16, 2008. After the plaintiff failed to submit opposition papers within the scheduled deadline, I issued an order directing that any opposition papers be filed before July 16, 2008. In a letter dated July 18, 2008, counsel to defendants wrote the Court noting that the plaintiff's deadline

---

simultaneously asserts a termination period running until September 19, 2005. (Chiu Dec. Ex. G.) A timeline attached to the Complaint sets forth a series of events beginning in May 2005 up to plaintiff's absences in September 2005, with the final entry being in October 2005. (Complaint Attachment.) Neither the Complaint nor the record contains an explanation as to why the 2006 date, as opposed to the 2005 date, is included, and I will assume for the purposes of this motion that the 2006 date is an error.

for submissions had passed. To date, the plaintiff has not filed opposition papers or submitted any other communications to the Court.

SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of a claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotations and citations omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c), Fed. R. Civ. P. In the absence of any disputed material fact, summary judgment is appropriate. Id.

The Second Circuit has held that "summary judgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default," but that an easily comprehensible notice to the non-moving party from the movant will suffice as adequate notice. Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Here, the defendants included in their moving papers an appropriate "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment," which states, in part:

> THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION . . . . If you do not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the material facts asserted by the defendant, the court may accept defendants' factual assertions as true. Judgment may then be entered in defendants' favor without a trial.

This notice was sufficiently clear to satisfy the requirements of Champion.

Though the defendants' motion is unopposed, defendants still must establish that they are entitled to judgment as a matter of law. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically. Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." Champion, 76 F.3d at 486 (quotation marks and citation omitted); accord Vt. Teddy Bear Co., 373 F.3d at 244 ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied even if no opposing evidentiary matter is presented.'") (emphasis in original) (quoting Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001)).

ANALYSIS

> I. Plaintiff Failed to File a Timely Discrimination Claim with the EEOC, and His Title VII Claim is Dismissed.

Under Title VII, a plaintiff may bring suit in federal court only after filing a timely complaint with the Equal Employment Opportunity Commission ("EEOC") and obtaining a right-to-sue letter. 42 U.S.C. § 2000e-5(e); Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001).

The face of the Complaint states that plaintiff did not secure a right-to-sue letter from the EEOC. (Complaint at 1 ("When I received my letter from EEOC I was told that my time was out of their jurisdiction."); Id. at 5 (checking slot indicating that EEOC "has not issued a Right to Sue letter") (emphasis in original)). In a letter of April 3, 2007, the EEOC stated in a letter to Daniel Chiu, counsel to defendants, "that there is no record in the New York District Office of a charge filed by Thomas Collier against your organization." (Chiu Dec. Ex. P.) Because the plaintiff commenced this action without first filing the necessary EEOC complaint and attaining a right-to-sue letter, his Title VII claim must be dismissed.

In addition, in order to bring a timely discrimination claim under Title VII, the EEOC filing must be submitted within 300 days of the alleged act of discrimination. 42 U.S.C. § 2000e-5(e); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108-09 (2002). The alleged discriminatory conduct that forms the basis of the plaintiff's Title VII claim occurred in September 2005. (56.1 ¶¶ 9-15.) Annexed to the Complaint is a

letter addressed to Collier on EEOC letterhead dated October 16, 2006, which thanks the plaintiff for an intake questionnaire and asserts that the date of harm "is more than 300 days ago" and therefore beyond EEOC jurisdiction. (Complaint, Attachment.) The defendants have come forth with evidence sufficient to show that no timely claim was filed. In addition, I note that nothing in the record supports an inference that the defendants' conduct could constitute an ongoing violation that persisted subsequent to the plaintiff's termination, which, construed in the light most favorable to plaintiff, appears to have ended when he was reinstated and provided with back pay on or about October 20, 2005. (Chiu Dec. Ex. M.)

Because plaintiff did not obtain a right-to-sue letter and because plaintiff's Title VII claim is time-barred, the defendants' motion is granted as to plaintiff's Title VII claim.

> II. Defendants' Motion is Granted as to Plaintiff's Claim Under 42 U.S.C. § 1983, which is Dismissed.

The Complaint asserts that the plaintiff's constitutional rights were denied in violation of 42 U.S.C. § 1983. (Complaint at 5.) It does not identify which provision of the Constitution is alleged to have been violated. The defendants reasonably have concluded that the section 1983 claim is intended to assert that plaintiff was subject to employment discrimination in violation of his rights under the Equal Protection clause of the Fourteenth Amendment, and move for summary judgment dismissing such a claim.

When a plaintiff asserts an employment-discrimination claim via 42 U.S.C. § 1983, it is appropriately scrutinized using the same burden-shifting analysis employed for a Title VII claim. See St. Mary's Honor Center v. Hicks, 509 U.S. 502,

506 n.1 (1993) (applying McDonnell-Douglas test to section 1983 claim). An employment-discrimination claim is assessed under McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), which also applies to discrimination claims brought under New York state and city human rights laws. Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000) (collecting cases). Therefore, even though the defendants' motion on plaintiff's Title VII and state law claims are granted on procedural grounds, the analysis to plaintiff's section 1983 claims applies to them as well.

Under the McDonnell-Douglas framework, a plaintiff has the initial burden of establishing a prima facie case of discrimination, which requires a showing that: (1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. Mandell v. County of Suffolk, 316 F.3d 368, 377-78 (2d Cir. 2003). If a plaintiff is able to establish a prima facie case of discrimination, the defendant then has the burden of producing evidence of a legitimate, nondiscriminatory reason for the adverse employment action. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000). If the defendant meets this burden, the plaintiff must come forward with evidence from which a reasonable jury could conclude that the purported nondiscriminatory basis for the adverse action is pretextual. Id. at 143.

Affording Collier the special solicitude granted to a pro se litigant, there are two potential incidents that relate to his section 1983 claim: first, his short-term and quickly remedied termination that arose from his sudden workplace absence; and second, questions raised by Melendez-Hutt after an incident in which the plaintiff was accused of

scratching a student in the face. For the reasons explained below, neither incident rises to the level of an adverse employment action, and has been explained by legitimate, race-neutral reasons.

> A. The Evidence Does Not Establish that Plaintiff Suffered an <u>Adverse Employment Action.</u>

An adverse employment action is a "materially adverse change in the terms and conditions of employment." <u>Mathirampuzha v. Potter</u>, 548 F.3d 70, 78 (2d Cir. 2008). A materially adverse change includes termination of employment, a decrease in salary, a less-distinguished title, diminished responsibilities or a loss of benefits. <u>Galabaya v. New York City Board of Education</u>, 202 F.3d 636, 640 (2d Cir. 2000). However, because there are no fixed criteria to determine what constitutes an adverse employment action, "courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" <u>Wanamaker v. Columbian Rope Co.</u>, 108 F.3d 462, 466 (2d Cir. 1997).

The record does not include evidence sufficient to raise a triable issue of fact showing that the plaintiff suffered an adverse employment action. Plaintiff's short-lived termination arose directly from his abrupt and unexplained absence from the workplace. As Melendez-Hutt states, "Based on plaintiff's failure to report to work or explain his absences, I believed he had abandoned his job and terminated his employment." (Melendez-Hutt Dec. ¶ 8.) In a letter dated September 15, 2005, Melendez-Hutt wrote to the plaintiff stating, "You left P.S. 30 on September 9, 2005 without explanation. You have not reported back since. I am considering this abandonment of position. You are therefore officially terminated." (Chiu Dec. Ex. E.) However, Collier's termination was brief, because as soon has he returned to work and

grieved the termination, Melendez-Hutt immediately agreed to reinstate the plaintiff and compensate him with full back pay. (Melendez-Hutt Dec. ¶ 9.) Melendez-Hutt submitted a request for an emergency paycheck dated October 20, 2005, which is also signed by the plaintiff. (Chiu Dec. Ex. M.) Grievance records reflect that plaintiff's "termination was overturned and he went into excess at that time." (Chiu Dec. Ex. G.) As a result, the record indicates that plaintiff's "termination" was the functional equivalent to an unannounced, fully paid, self-instigated leave from the workplace, with no negative consequence to the plaintiff. Plaintiff's paid work absence did not constitute an adverse employment action. See Joseph v. Leavitt, 465 F.3d 87, 91-92 (2d Cir. 2006) (paid leave of absence pending outcome of investigation is not an adverse employment action), cert. denied, 549 U.S. 1282 (2007); Eichler v. American International Group, Inc., 2007 WL 963279, at *17 (S.D.N.Y. Mar. 30, 2007) (paid leave given to plaintiff subsequent to her resignation was not an adverse employment action).

Second, the actions of Melendez-Hutt concerning an alleged incident in which plaintiff scratched the face of a student do not constitute an adverse employment action. Melendez-Hutt received a handwritten note from a student named Jeffrey, which stated in part: "Then Mr. Thomas was pointing at my face and told me to stop. Then he scratched me in the face." (Chiu Dec. Ex. H.) Both Jeffrey and his mother raised the issue with Melendez-Hutt. (Chiu Dec. Ex. J.) A regulation issued by the DOE chancellor requires that any allegation of corporal punishment "be reported immediately" and that the event be investigated. (Chiu Dec. Ex. I at IV(A) (emphasis in original).). The DOE's Office of Special Investigation directed Melendez-Hutt to investigate the incident. (Chiu Dec. Ex. J.) In a letter to the plaintiff, Melendez-Hutt stated:

> I proceeded to conduct the investigation. I conclude that you did in fact scratch the boy just below his eye. I also conclude that it was an accident. It was done unintentionally.
>
> I am instructing you to be more careful when you are speaking with students.

(Id.)

Neither the investigation nor the resulting note constitutes an adverse employment action. An adverse employment action does not occur when an employer enforces a disciplinary policy in a reasonable manner. Joseph v. Leavitt, 465 F.3d at 91. Written warnings will not, without more, constitute an adverse employment action. See Martinez v. New York City Dep't of Education, 2008 WL 2220638, at *10 n.11 (S.D.N.Y. May 27, 2008); Blake v. Potter, 2007 WL 2815637, at *6 (S.D.N.Y. Sept. 25, 2007) (request for a doctor's note and letter of warning do not constitute adverse employment actions); Byong v. SL Green Realty Corp., 2007 WL 831740, at *8 (S.D.N.Y. Mar. 20, 2007) ("Because the warnings do not 'alter[ ] the terms and conditions of the plaintiff's employment in a materially negative way,' they are not adverse employment actions.") (alteration in original) (quoting Patrolmen's Benevolent Ass'n of City of New York v. City of New York, 310 F.3d 43, 51 (2d Cir. 2002)). There is no evidence indicating that Melendez-Hutt's instruction that the plaintiff exercise caution while speaking to students had additional repercussions for the plaintiff.

Because no reasonable jury could conclude that the plaintiff suffered an adverse employment action, the defendants' motion is granted.

      B.    Defendants Have Set Forth Race-Neutral Explanations for their Conduct, and the Record Supports No Inference of Discrimination.

Even if the defendants' conduct could be construed to raise a triable issue of fact as to whether the plaintiff suffered an adverse employment action, defendants' motion is granted because it sets forth evidence sufficient to establish that defendants acted in a reasonable, race-neutral fashion. The plaintiff's brief termination arose because of a period of unannounced, unexplained work absences. (Melendez-Hutt Dec. ¶¶ 7-8, 11-12; Chiu Dec. Ex. E.) In addition, Melendez-Hutt's request to be "careful" when addressing children was the result of an investigation required by established DOE policy, which occurred only after Melendez-Hutt received a complaint from a student and his mother. (Chiu Dec. Exs. H-J.) These are legitimate, non-discriminatory justifications for the defendants' actions. See, e.g., McPherson v. New York City Department of Education, 457 F.3d 211, 215 (2d Cir. 2006) (acts of corporal punishment are a legitimate, non-discriminatory reason for terminating teacher's employment); McLee v. Chrysler Corp., 109 F.3d 130, 133-34 (2d Cir. 1997) (chronic tardiness and two unexcused absences are legitimate, non-discriminatory reasons for termination).

Because no reasonable jury could conclude that the defendants acted with discriminatory purpose, the defendants' motion is granted.

### III. Because Plaintiff Failed to File a Notice of Claim, His Counts Under New York State and Municipal Laws are Dismissed.

As a threshold requirement for bringing a claim under New York Executive Law § 296 and New York City Administrative Code § 8-107, a plaintiff must file a formal notice of claim "within ninety days after the claim arises." See N.Y. Educ. Law § 3813(2) (legal actions against school districts must be preceded by a formal notice of claim); N.Y. Gen. Mun. Law § 50-e (setting forth procedures for filing notices of

claim); Parochial Bus Systems, Inc. v. Board of Education of the City of New York, 60 N.Y.2d 539, 549 (1983) ("The Legislature has spoken unequivocally that no action or proceeding may be prosecuted or maintained against any school district or board of education unless a notice of claim has been 'presented to the governing body.'") (emphasis in original).  Failure to file an appropriate notice of claim routinely results in dismissal at the summary judgment and pleading stages.  See Pinder v. City of New York, 49 A.D.3d 280, 281 (1st Dep't 2008) (dismissing Executive Law § 296 claim brought by former school employee who failed to file a timely notice of claim); Falchenberg v. New York City Dep't of Education, 375 F. Supp. 2d 344, 349 (S.D.N.Y. 2005) (dismissing claim under New York City Administrative Code § 8-107 for, among other things, failure to file a timely notice of claim).

The defendants have come forth with evidence sufficient to show that the required notice of claim was not filed.  The Complaint makes reference to causes of action under the New York Executive Law and City Administrative Code in a handwritten note above the prayer for relief.  (Complaint at 5.)  The Complaint makes no mention of any notices of claim, and none is attached.  In response to an interrogatory asking for the identification of individuals at the DOE to whom plaintiff complained, the plaintiff answered "N/A."  (Chiu Dec. Ex. N ¶ 16, Ex. O Interrogatory 16; Collier Dep. at 103.)  Plaintiff testified at his deposition: "I didn't report it to DOE, so it's not even on [the interrogatory response].  I went to [E]EOC."  (Collier Dep. at 103.)

Because the defendants have come forth with evidence sufficient to show that the plaintiff did not file a notice of claim, as required by New York Executive Law § 296 and New York City Administrative Code 8-107, their motion for summary judgment

is granted, and these claims are dismissed.

CONCLUSION

        The defendants' motion for summary judgment is granted in full. This action is dismissed.

        The Clerk is directed to enter judgment for the defendants.

        SO ORDERED.

                                  P. Kevin Castel
                                United States District Judge

Dated: New York, New York
       February 24, 2009